## Case No. 5,013.

FOX v. The LUCY A. BLOSSOM.

[4 West. Law Month. 415.]

District Court, N. D. New York.    Feb. Term, 1854.

·John Ganson, for libellants.
W. H. Greene, for defendants.

HALL, District Judge. This suit was instituted for the purpose of establishing an alleged title to the brig Lucy A. Blossom, her tackle, &c.; and of obtaining the possession and claimed to be the rightful owners thereof,· under an adverse title.

The facts in the case are substantially as follows: On the 18th day of November, 1851, the brig Blossom—then being the property of the libellant—was run into and sunk by the steamer Niagara. The Niagara was then owned by Charles M. Reed, Esq.. but was running under a charter to the New-York & Erie Railroad Company, and she was victualed, manned, managed and controlled, wholly by the agents of that company. On the 4th of December, 1851, the libellant in this suit filed in this court, his libel against the Niagara, her tackle, apparel, and furniture; and thereby alleged that by the collision referred to, the said brig, and the freight or the cargo on board of the same, became wholly lost to the libellant; and that it occurred through the negligence, unskilfulness and fault of those in charge of the Niagara. The Niagara was thereupon arrested, and Reed, her general owner, appeared and defended. After a hearing on pleadings and process, this court adjudged and decreed that the collision in the libel mentioned occurred as therein stated, and that the brig Lucy A. Blossom was thereby lost; that the libellant should recover $7,755.-20 for his damages and also his costs of suit; and that if the said damages and costs were not paid into court in ten days, the Niagara her tackle, &c.. should be sold to satisfy the decree. The court intended to give, and by this decree, did give, to the libellant full damages for the total loss of the vessel; upon the basis that such vessel having been sunk, was of no value; or that her value was so entirely speculative that it ought not to be taken into consideration; and it was conclusively established by the testimony, given on the hearing in this case, that the court intended to give to the libellant, by way of damages, the whole value of the property sunk; and that its award of damages was made on that basis. From this decree against the Niagara, an appeal was taken by Reed, her owner; but a few days after the appeal had been perfected the whole matter was settled, and Reed, the general owner and claimant of the Niagara, gave the libellant his drafts on the New-York & Erie Railroad Company for the full amount of the decree. These drafts were accepted and afterwards paid by the railroad company; and when given by Reed and accepted by the company, they were taken and received by the libellant in full payment and satisfaction of the decree. The appeal was of course abandoned upon the decree being thus fully settled and satisfied.

At the time of the collision, the Blossom was insured by "The New-York Protection Insurance Company," of Rome, N. Y., in the sum of six thousand dollars. She was valued at eight thousand dollars in the policy issued on such insurance, but an insurance beyond the sum of six thousand dollars was forbidden by the terms of such policy. About the time that the libellant filed his libel against the Niagara, he gave notice of the loss of the Blossom by the collision, and that he abandoned the vessel to the company as a total loss. There is no direct proof of an acceptance of this abandonment, and it is doubtful whether the testimony authorizes the inference that the abandonment was ever accepted by the company. A short time after this notice of abandonment was given, the insurance company failed, and its assets passed into the hands of assignees. The libellant had had other dealings with the company, in respect to other insurances; and after the settlement and satisfaction of the decree in the collision suit, as hereinafter mentioned, the libellant settled with the assignees of the insurance company in respect to all the dealings between him and the company, (including the. insurance upon the Blossom), and then took from the assignees of the company an assignment of all their interest in the Lucy A. Blossom, her tackle, apparel and furniture. The assignee who made this settlement, was informed at the time it was made that a decree had been obtained against the Niagara, but he stated on his examination as a witness in this suit, that he was unable to say that he then knew, or had been informed, that the decree had been paid or satisfied. The vessel remained submerged until the spring of 1852; and until after the payment of the decree in the collision suit and settlement between the libellant and the insurance company. Early in the spring of that year, both the libellant and the New-York & Erie Company, intimated an intention to make efforts to raise the sunken vessel, and the agent of the company made a contract with certain parties to raise her for the benefit of the company. This became known to the libellant. and. as soon as these contractors proceeded to the vessel for the purpose of raising her in pursuance of

their contract, he caused notice of his claim to the ownership of the Blossom to be served on the persons employed in the effort to raise her. He also gave notice of his intention to prosecute any one who should interfere with the vessel in violation of his rights. The Blossom was nevertheless raised by the persons employed by the New-York & Erie Railroad Company, and afterwards sold by that company to the claimants in the present suit. They repaired her at great expense, after which she was taken from their possession under the warrant of arrest issued in this suit.

Under this state of facts, it was claimed by the advocate for the claimants and respondents that, by the recovery and payment of the decree for the value of the sunken vessel, the property therein passed to the New-York & Erie Railroad Company, or to Reed, the owner of the Niagara; and that the libellant had no right of property in the vessel after such payment, and he cited 2 Kent, Comm. 388, and note c, 380; 2 Bouv. Inst. 148; 8 Cow. 43; 2 Bailey, 466; Hopkins v. Hersey, 7 Shepley [20 Me.] 449; 2 Starkie, Ev. 1169; 1 Rawle, 121, 273, 285; 12 Pick. 202; 4 Esp. 251; 3 Barn. & C. 196; [Comegys v. Vasse] 1 Pet. [26 U. S.] 214; 2 Kent, Comm. 334–336, 360.

On the other hand, it was insisted—1st. That the principle established by the cases which decide that when a defendant in an action of trespass or trover, pays a judgment for the value of a chattel which he has tortiously taken and converted to his own use, only applies in cases where the possession has been changed and the action is brought to recover damages for the unlawful appropriation of the chattel; and not when it was brought, as in the collision case referred to, to recover damages for an injury to the chattel, the possession not being changed. 2d. That the New-York & Erie Company had no right to purchase a vessel or take the title to the brig; that therefore the title could not pass to them, and could not leave the original owner of the vessel until it passed to another; that Reed was not personally liable for the damages decreed in the collision suit, and did not pay them; nor were they paid for him, or for his benefit; and that therefore the title did not pass to Reed. 3d. That the vessel having been abandoned to the insurance company, the title to it was vested in that company at the time the decree was obtained and paid; and that it could not, therefore, pass in consequence of the payment made to the libellant; and that the title the libellant now sets up was subsequently acquired, and can not be affected by the payment.

Other questions in respect to the right of the court to entertain jurisdiction of the questions presented, and to the right of the libellant to demand possession of the Blossom until payment of salvage and of the costs of subsequent repairs, were raised and ably argued by the advocates of the respective parties; but it is unnecessary to discuss those questions, as the case will be disposed of upon the principal question—that of title—raised in the suit.

The existence of the principle which transfers to the defendant, in an action of trover or trespass, the title to a chattel which he has wrongfully appropriated, whenever he pays the judgment for its value, recovered against him in consequence of that appropriation, is not denied. It is, however, insisted that it is not applicable in a case like the present; and this is the first question to be decided in this case. The principle itself is founded in natural justice and equity and we accordingly find it distinctly recognized in the earliest authentic code of laws to which we have access. In the law promulgated from Mount Sinai we find it declared: "And if a man shall open a pit, or if a man dig a pit, and not cover it, and an ox or an ass fall therein; the owner of the pit shall make it good, and give money unto the owner of them, and the dead beast shall be his. And if one man's ox hurt another that he die; then they shall sell the live ox and divide the money of it; and the dead ox also they shall divide. Or if it be known that the ox hath used to push in time past, and his owner hath not kept him in; he shall surely pay ox for ox; and the dead shall be his own." Exodus, xxi., 33–36. In the civil law, the same principle is recognized. Coop. Just. lib. 4, tit. 1, §§ 15, 16. The common law courts have uniformly recognized the principle from the reign of James I.; but some judges have held that the title passed upon the recovery of the judgment, while others have adopted the more reasonable doctrine that the transfer takes place only upon satisfaction of the judgment. Brown v. Wootton, Cro. Jac. 73; 2 Kent, Comm. 387, 388, and note, where the cases are referred to and discussed; Curtis v. Groat, 6 Johns. 168; Osterhout v. Roberts, 8 Cow. 43.

I can not think that the form of the action determines the principle. In the cases of judgment and satisfaction in trespass, trover, detinue and replevin, it would now be applied without hesitation; and these are, perhaps, the only form of action at common law, in reference to which the question has arisen in the form in which it is presented in this case. The Mosaic Code had as little respect for forms of action as the present New York Code of Procedure, and the cases to which the former code applied this principle, as well as the cases to which the civil law applied it in the sections before referred to, were cases in which the possession of the property was not necessarily in the party by whom the price for value was to be paid; nor was its appropriation to his own use essential to its application. In Lacon v. Barnard, Cro. Car. 35, the right of the parties was determined, not upon the form of the action, but upon the question whether the defendant in the prior action of trespass had recovered damages in lieu of the property— that is, its estimated value. The court in

Curtis v. Groat, while declaring that the "recovery ought to have been distinctly for that specific chattel before the rule could apply." also declared the principle on which the rule was based. It was then said by the court: If a trespasser takes a chattel into his own possession. and the owner sues and recovers damages for the specific chattel so taken and detained, the recovery and execution done thereupon will change the property by operation of law, on the principle "Solutio pretii emptionis loco habitur" (Jenk. Cent. 56, 189, Case 88); and this seems to be the rule. both in the French and in the civil law, where the transfer by such means is considered as a complete and absolute title (Pothier, Traité du Droit Propriété, No. 464, Dig. 1, 35, 63). This principle of "solutio pretii emptionis loco habitur," is variously, and perhaps, it may be truly said, frequently applied, in the courts of common law and equity. The doctrine of subrogation may, I think. be traced to this principle. In many other cases, where no suit has been brought, the principle is properly and uniformly applied. The indorser or guarantor of a promissory note, which he has transferred to another, by indorsement or other writing, is undoubtedly reinstated in his ownership whenever he pays the note in discharge of his fixed liability as such indorser or guarantor; the party who duly pays a bill or note. after an acceptance by him, supra protest for the honor of an indorser, becomes the owner of the bill as to all parties standing before him for whose honor he pays; one of several underwriters upon different policies covering the same risk, who pays the whole amount insured, has a claim for contribution against the others (Lucas v. Jefferson Ins. Co., 6 Cow. 635: Newby v. Reed, 1 W. Bl. 416; Wiggin v. Suffolk Ins. Co., 18 Pick. 155); the underwriter who has paid a loss occasioned by an unlawful capture of a ship insured, or by the negligence of the master, pilot, &c., has a right of action, even in the name of the assured, for reimbursement of the loss he has sustained (Phil. Ins., 3d Ed., §§ 2008, 2009); the underwriter on the life of a debtor, who had paid the loss to the assured, is entitled to an action against the assured for any amount he may receive from the executors or administrators of the party whose life was insured on account of the debt, to secure which the policy was made (Id. §§ 1729, 2010). And these are all, as I understand it. instances of the transfer of rights of property or rights in action, in accordance with this principle. It is also in accordance with this principle that the underwriter is entitled to the property insured when the assured has been voluntarily paid or has recovered. or has obtained satisfaction upon a judgment, for a total loss without an abandonment (Phil. Ins., 3d Ed., §§ 1495, 1511; Arn. Ins. p. 1185, § 410), and that an abandonment (and of course the receipt from the underwriter of the whole sum insured on the basis of a total loss) is in law a transfer to the underwriter of all claims against third parties on account of negligence or misconduct occasioning the damage to the subject insured, or the destruction of it, by a peril insured against (Phil. Ins., 2d Ed., 1711).

The same principle has doubtless been applied, in analogous cases, in the admiralty courts; for in questions of this character. relating to the title of property, the admiralty almost uniformly adopts the doctrines which prevail in the common law and equity courts. I have not, therefore, sought for similar cases in the reports of the decisions of the admiralty courts, but have endeavored to find a case, or cases. like the present, in which the doctrine we have been considering has been discussed or applied. Perhaps I have not been sufficiently diligent in the search, and, at all events, I have been able to find but a single case bearing directly upon the question now presented. The case referred to is that of The Columbus, 3 W. Rob. Adm. 158; and in that case the question was whether the registrar and merchants had properly allowed a libellant in a cause of collision, the whole value of his vessel, by way of damages. The vessel of the libellant had been sunk by the collision, but before the proceedings were commenced in the court of admiralty, the sunken vessel had been raised at the expense of the owner of the vessel which had caused the injury, and carried into Rye harbor. Notice thereof had been given to the agent of the libellant, with an intimation that the owner of the Columbus was ready to deliver up the same and that he would not be responsible for any further damage or expense incurred by her remaining unrepaired in the harbor. No notice was taken of this intimation, and the suit in admiralty was subsequently commenced. The registrar and merchants reported the full value of the vessel, by way of damages, as for a total loss; and this report was, after discussion and argument, confirmed by the court. In delivering his opinion in that case, Dr. Lushington, as I think, sanctioned the principle for which the advocate for the respondents has contended. not only in declaring that the report ought to be confirmed, but also when he declared that Mr. Fletcher, the owner of the vessel by which the libellant's vessel had been sunk, was, as the case then stood, entitled to have the vessel; or her proceeds. if he thought proper to make application for her sale under the direction of the court.

Without referring to other authorities or enumerating other cases in which the principle we have been considering has been substantially applied. I shall hold that the recovery and satisfaction of the decree in the collision case, if the libellant had been still the owner of the injured and submerged vessel, would have transferred the title to the sunken vessel to the party paying the same. As between the libellant and Reed, the pay-

ment of the former decree was made by the latter, but if it had been made in fact and in law by the New-York & Erie Railroad Company, I do not think the objection that such company had no legal right to make a direct purchase of the vessel, could avail. If the law could not cast the title upon the company by reason of their inability to take such title, then the payment must be deemed to have been made by Reed, or in his behalf, and the title to have vested in him; but I can perceive no legal objection to the vesting of the title in the railroad company. But it is said that the title to the vessel was in the insurance company, in consequence of an abandonment and acceptance; and that, consequently, the title could not pass by the payment to Fox, the libellant in this and the collision suit. I have already stated that it was at least doubtful whether there was any proof of an acceptance of the abandonment, but I propose to assume that the abandonment was accepted. and then consider the question which the case will, after that assumption, present. From the time of the abandonment and acceptance, the suit against the Niagara necessarily proceeded for the benefit of the insurance company; for the right of action had, by the abandonment and acceptance, been transferred to the company (Phil. Ins., 3d Ed., 1711); and when the decree was recovered and paid, the claim of Fox, the libellant in this and the collision suit, for the amount insured, was fully discharged, and he held the balance above that amount as a trustee for the company. The right of action and the decree then belonged to the insurance company, and the payment made to the libellant was made for their benefit, and upon that payment, thus made for their benefit, the title passed from them in accordance with the principle we have been considering. The insurance company's interest in the vessel resulted from the loss and subsequent abandonment and acceptance, and their consequent legal liability to pay as for a total loss under their policy; and when that total loss was paid, and more than paid, to the libellant by the payment and satisfaction of the decree, the libellant could have no further claim against the company, but the company could probably have recovered from him what he had received over and above the amount to which he was entitled under the policy. In short, the principle "Solutio pretii emptionis loco habitur," which would have transferred the absolute title to the vessel to the insurance company, if they had paid a total loss under their policy, applies with equal force between the insurance company and those who actually pay the loss by paying the value of the vessel under the decree: for the insurance company actually received the price of the vessel through the present libellant as their trustee or agent. Besides, the suit had been prosecuted and the decree recovered in the name of Fox, the libellant,

and there is no proof that Reed or the railroad company knew that the right of action had been assigned or transferred to the insurance company before the payment of the decree. And this is enough to make the payment binding on the company and operate to transfer the title to the vessel, even if there had been no subsequent confirmation of the acts of the libellant in prosecuting the suit to a decree in his own name.

But as between the present libellant and the parties here maintaining their rights derived from the railroad company and Reed, the libellant is estopped from averring that he had abandoned and thus assigned the sunken ship and the right of action for the collision, to the insurance company. The parties liable for the injury, and against whom the assigned right of action and decree existed, paid the libellant the amount of such decree, believing him to be entitled to receive it; and he accepted that payment without disclosing the fact of the assignment or transfer. Under such circumstances he is clearly estopped from setting up his own want of title at that time to defeat any right which the parties paying would have acquired by their payment in case his right and ownership had continued. The libel must be dismissed with costs.